IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

T-MOBILE, NORTHEAST, LLC, :
:
    Plaintiff, :
: C.A. No. 16-1108-ER
v. :
:
CITY OF WILMINGTON, DELAWARE :
AND CITY OF WILMINGTON ZONING :
BOARD OF ADJUSTMENT, :
:
    Defendants. :

M E M O R A N D U M[1]

EDUARDO C. ROBRENO, J.                             March 16, 2020

Before the Court are the parties' cross-motions for summary judgment, Defendants' motion for discovery under Federal Rule of Civil Procedure 56(d), and T-Mobile's motion to exclude Defendants' expert, Lee Afflerbach. The Court will grant in part and deny in part Defendants' motion for summary judgment, deny Defendants' motion for discovery, and deny T-Mobile's motion for summary judgment and motion to exclude Afflerbach.

I. **FACTUAL AND LEGAL BACKGROUND**

In 2016, T-Mobile submitted an application to the Wilmington Zoning Board (the "Board") to expand its cell

---

[1] The parties filed their briefs and exhibits under seal. Given the public's interest in the outcome of this case and the lack of sensitive information contained in this document, the Court finds no justification to cloak its opinion under a veil of secrecy and will, therefore, not file it under seal.

service/coverage. T-Mobile sought to place a cell antenna on the roof of the Claymore senior center enclosed in a fifteen-foot extension to an existing elevator shaft. It is clear from the hearing transcript that the shaft extension itself would not have required zoning approval, only the placement of the antenna inside it required approval. At the Board's public hearing to determine whether to grant the application, T-Mobile presented witnesses and argued that its proposal complied with the City Code (e.g. that it was on a roof and hidden inside an architectural element) and that it investigated alternative sites before picking the senior center (specifically the steeple of St. Elizabeth's church and the Hillside Center apartments). The Board members asked questions during the presentation, and at its conclusion, orally voted to deny the application. A written decision followed. T-Mobile filed its lawsuit claiming, inter alia, that the Board's decision was not supported by substantial evidence and, in any event, the denial acted as an effective prohibition of service.

The Court initially granted summary judgment in favor of the Defendants due to the untimeliness of T-Mobile's complaint. The Third Circuit Court of Appeals reversed. After remand, the parties filed renewed motions for summary judgment. The court held oral argument on the cross-motions and they are now ready for adjudication.

## II. LEGAL STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a

genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56).

The standard for summary judgment is identical when addressing cross-motions for summary judgment. Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)).

**III. DISCUSSION**

    **A.    The Summary Judgment Motions**

        **1.    The Board's Denial Was Supported by Substantial Evidence in the Record**

A zoning board's denial of "a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). T-Mobile argues that the Board's denial was not supported by substantial evidence while the Board seeks a judgment that its decision was supported.

The substantial evidence standard of review is deferential. It requires that the decision at issue be supported

4

by more than a mere scintilla of evidence. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477 (1951). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Substantial evidence review is restricted to the evidence that was before the zoning board. Sprint Spectrum, L.P. v. Zoning Bd. of Adjmt. of Paramus, 606 F. App'x 669, 672 (3d Cir. 2015).

At the conclusion of the zoning hearing, the first Board member to vote opined that, "I personally I don't want to encourage T-Mobile or any additional carriers to utilize that space for that purpose, due to the lack of community support and the potential for the adverse effect on the surrounding properties in that neighborhood. I'm against the application this evening." R. 639.[2] The second Board member stated, "I did not find that there was enough proof to support the application, and I vote against it as well." Id. The Chairman of the Board then provided:

> It is kind of a tough case for me, but, after listening to all the evidence, I'm not even clear that enough of a showing has been made that it would be needed for T-Mobile to have this facility, as far as their own information that's been given to us is concerned. I'm just not convinced from the information and from the testimony that it is actually needed to fulfill the requirement or T-Mobile's expressed desire to fill any coverage gap that exists or any coverage need that exists.

---

[2] The administrative record is abbreviated as "R" and can be found at ECF No. 140.

>     I'm also not convinced that it meets the
> requirements of the code as to either the placement of
> the antenna or that it meets the height restrictions
> that would be otherwise required by the code.
>     And, therefore, I also vote against the
> application and, therefore, the application fails
> three to nothing.

R. 639-40.

In its written decision, the Board provided that it denied the application because the installation "would not be in harmony with the general purpose and intent of the zoning requirements and would have an adverse impact on the present character of the neighborhood." R. 510. It continued that T-Mobile had submitted insufficient evidence and testimony: (a) to support T-Mobile's claim that there was a coverage gap in the area; (b) to adequately explain how T-Mobile determined that there was a gap; and (c) to show the necessity for the use of that location. Id. The Board also indicated that T-Mobile had made insufficient efforts to locate potential alternate sites. Id. Finally, the Board concluded that:

> approval of the proposed installation at this location would have an adverse effect on surrounding properties in the neighborhood because it would allow the Applicant and encourage other carriers to utilize this site contrary to the City Code provisions and other legal requirements which seek to protect area residents, maximize the use of existing telecommunications sites, and minimize the need for new sites such as this.

Id.

6

The parties have focused on three reasons for the denial which they argue were or were not supported by substantial evidence: (1) that the proposed facility was not in harmony with the general purpose and intent of the zoning regulations; (2) that T-Mobile failed to adequately explore alternative sites; and (3) that T-Mobile's "needs analysis" was inadequate.

Again, the Court does not have to agree with the Board's reasoning, it need only determine that more than a scintilla of evidence supports at least one of the Board's articulated reasons for the denial.

      **a.**    **The Board's Finding that the Proposed Facility Was Not in Harmony with the General Purpose and Intent of the Zoning Regulations Was Supported by Substantial Evidence**

The Wilmington City Code provides that the Board can grant special exceptions like the one sought by T-Mobile if the proposed facility will "be in harmony with the general purpose and intent of the zoning regulations and maps and will not tend to affect adversely the use of neighboring property." Wilmington City Code, § 48-71(a).

The Wilmington Zoning Regulations provide that "[t]he concealment or incorporation of antenna facilities into the interior of a building or structure is preferable, followed in order by concealment in exterior building elements, recessed rooftop placement, and locations on the recessed upper facades

7

of tiered buildings." City of Wilmington Standards and Regulations Manual for Commercial Antennas and Related Facilities ("Regulations") III.A.1, R. 693. The Regulations continue that "[n]ew antenna support structures shall be encouraged to locate on existing antenna facilities where feasible" and "[i]f a new structure is to be constructed it shall be designed structurally and electrically to accommodate both the applicants [sic] antennas and comparable antennas for at least two additional users." Regulations III.A.3 & 4, R. 693. The Regulations also provide that "[f]acilities shall be compatible in scale and integrated architecturally with the design of surrounding buildings and the natural setting." Regulations III.B.2, R. 693.

There is substantial evidence to support the Board's determination that the proposed facility was not in harmony with the purpose and intent of the zoning regulations. While the antenna was to be enclosed in an exterior building element, the hearing testimony shows that T-Mobile's proposed facility would not realistically allow for co-location of additional antennas.[3] Based on the mock-up photos, the fifteen-foot extension of the

---

[3] T-Mobile's radio frequency expert, Madan Belgode, explained that there was technically room in the tower extension for an additional antenna, but it would have to be below T-Mobile's, and T-Mobile had already concluded that a wireless antenna would not be effective any lower. See R. 544-45; 578; 584; 588-92; 623.

8

narrow elevator shaft, which would be the tallest part of the building, also could easily be found to be incompatible with the scale of the surroundings.

> **b.  The Board's Conclusion that T-Mobile Failed to Adequately Explore Alternative Sites Is Supported by Substantial Evidence**

The City's Regulations require a "site selection analysis providing reasonable siting alternatives for consideration including the identification of collocation options." Regulations II.B.2(j)(2), R 687. At the hearing, Belgode confirmed that T-Mobile seriously investigated only three sites for their proposed facility: the Claymore senior center, the steeple at St. Elizabeth's church, and the Hillside Center apartments. R. 540-41. The owner of Hillside Center would not lease the space to T-Mobile. R. 541. When asked whether the church steeple would have been workable, Belgode replied only that T-Mobile preferred the rooftop of the senior center because placing the antenna in the steeple would be more difficult. R. 542. Belgode did not know if T-Mobile had inquired whether the church would lease the space. R. 541. T-Mobile also did not inquire whether any of the rooftops at the church would have been suitable.

The Court concludes that the Board's decision that T-Mobile failed to adequately explore alternative sites is supported by substantial evidence including the evidence that T-

Mobile only reviewed three options, the review of those sites appeared cursory or incomplete, and T-Mobile's chosen site would not allow for co-location.

        **c.** **The Board's finding that T-Mobile Had Presented an Inadequate Needs Analysis Based on a Gap in Service Is Not Supported by Substantial Evidence**

The City's Regulations require the applicant to submit a "needs analysis describing how the proposed facility will address an existing service issue." Regulations II.B.2(j)(1), R. 687. During the hearing, Belgode explained why T-Mobile had a need for the new antenna. See Tr. 524-62. T-Mobile also provided a justification report for the Board. Tr. 255-263.[4] During the hearing, the Board members asked questions regarding current coverage which were addressed by Belgode. Contrary to Defendants' arguments, the transcript does not show that Belgode was unable to answer certain questions or gave answers contradicting a need. In the Board's written denial, it contended that T-Mobile did not adequately establish a gap in service or the necessity of the antenna. However, T-Mobile was required to show only that the new antenna would address an

---

[4]     The Court's review of the needs analysis is somewhat hampered by the fact that the various coverage maps were not submitted in color. See R. 258-261. As discussed immediately below, however, whether this particular reason is supported by substantial evidence is not determinative since the previous two reasons given by the Board are so supported.

10

existing service issue. The written denial does not specifically address this inquiry and is therefore deficient.

Based on the materials before the Board, the testimony during the hearing, and the Board's written denial, the Court concludes that the Board did not support with substantial evidence its conclusion that T-Mobile failed to adequately establish a need for the antenna because it did not show a gap in service. However, because the Board's decision to deny the application was supported by substantial evidence in other ways, this is harmless error.

### d. Summary Judgment in Favor of Defendants on this Issue Is Appropriate

Viewing the facts in the light most favorable to T-Mobile and based on the analysis above that substantial evidence supports the Board's conclusions that: (1) the proposed facility would not be in harmony with the general purpose and intent of the zoning regulations; and (2) T-Mobile failed to adequately explore alternative sites, the Court concludes that the Board's decision to deny T-Mobile's application is supported by substantial evidence. Therefore, Defendants are entitled to summary judgment on this issue.

### e. T-Mobile Is Not Entitled to Summary Judgment on this Issue

Viewing the facts in the light most favorable to Defendants, the Court concludes, based on the analysis above,

that there is no genuine dispute that the Board's decision was supported by substantial evidence. Therefore, T-Mobile is not entitled to summary judgment on this issue.

**2. Material Prohibition**

Even if the Board's decision was supported by substantial evidence, the Court should reverse it if the denial effectively prohibited T-Mobile from providing wireless service.

The relevant United States Code provision provides that any regulation of the placement of wireless facilities "shall not prohibit or <u>have the effect of prohibiting</u> the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II) (emphasis added). Unlike the discussion above regarding substantial evidence review, this analysis is de novo and "is not limited to the record compiled by the state or local authority." <u>Paramus</u>, 606 F. App'x at 671.

**a. The Applicable Test to Determine Effective Prohibition**

When this case was filed, it was clear that the Third Circuit's test for "effective prohibition" applied. That test, which has been followed by several other circuit courts, requires a provider to show when arguing that a denial constitutes an effective prohibition of service that: (1) the proposed "facility will fill an existing significant gap in the ability of remote users to access the [network]"; and (2) "the manner in which [the provider] proposes to fill the significant

12

gap in service is the least intrusive on the values that the denial sought to serve." APT Pittsburgh Ltd. P'ship v. Penn Twp. Butler Cty. of Pa., 196 F.3d 469, 480 (3d Cir. 1999).

Recently, however, and while this case was on appeal, the FCC issued a declaratory ruling that purported to change the effective prohibition test. In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv., 33 F.C.C. Rcd. 9088 (2018). In this ruling, the FCC provides that effective prohibition occurs if the action of a zoning board "materially inhibits" a wireless carrier from providing service, including materially inhibiting the improvement of service. Id. ¶¶ 35-37. The FCC specifically rejected the significant gap test. Id. ¶ 40. Thus, this new test does not require a gap in service or that the proposed solution be the least intrusive way to fill the gap. It also gives more flexibility to the provider to determine what levels of coverage are needed in an area.

This case was filed prior to the issuance of the FTC's declaratory ruling. Therefore, the question is whether the ruling has retroactive effect. "Retroactivity is not favored in the law" and an agency may not issue retroactive rules without express congressional authorization. Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988). No such Congressional authority is claimed in this case.

13

The Third Circuit has "held that a new rule should not be deemed to be 'retroactive' in its operation—and thus does not implicate the Supreme Court's concerns in Bowen—if it 'd[oes] not alter existing rights or obligations [but] merely clarifie[s] what those existing rights and obligations ha[ve] always been.'" Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 506 (3d Cir. 2008) (quoting Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary, 93 F.3d 103, 113 (3d Cir. 1996)). Thus, when a new agency rule is merely a clarification of the law, rather than a substantive change, "the application of that new rule to pre-promulgation conduct necessarily does not have an impermissible retroactive effect, regardless of whether Congress has delegated retroactive rulemaking power to the agency." Id.

The Court concludes that The FCC's new rule is not a mere clarification of the standard for effective prohibition of service but, instead, makes a substantive change in the law, altering existing obligations. Id. Application of the new standard is an abrupt departure from a well-established practice in the Third Circuit as well as in other circuits. Instead of the Third Circuit's more stringent test where the carrier must establish a significant gap in service and that it has chosen the least intrusive solution, under the FCC ruling, it appears that to find an effective prohibition, a court need only

14

conclude that the denial materially inhibits a wireless carrier from improving its service. This new standard grants carriers greater substantive rights at the expense of the local municipal government. Concluding that the FCC's declaratory ruling is not retroactive because the ruling makes substantive changes to the law and alters existing obligations, the Court will apply the Third Circuit's significant gap test in this case.

        b.    **The Existence of Genuine Disputes as to Material Facts Prevents the Award of Summary Judgment to Either Party on this Issue**

The parties' experts[5] debate whether there is a gap in service or whether T-Mobile is merely attempting to improve service. They also disagree on whether there are more appropriate locations for the antenna. The Court concludes that, based on the expert materials, there are genuine disputes as to material facts regarding whether there is a significant gap in T-Mobile's service and whether its proposed solution is the least intrusive on the values the Board's denial sought to serve. APT Pittsburgh, 196 F.3d at 480. Whether the Court views the facts in the light most favorable to T-Mobile or Defendants, these genuine disputes remain. Therefore, summary judgment on this issue is inappropriate for either party.

---

[5] As discussed immediately below, the Court will deny T-Mobile's motion to exclude Defendants' expert, Lee Afflerbach.

15

B.  **The Motion to Exclude Lee Afflerbach**

T-Mobile seeks to exclude the testimony and reports of the City's expert, Lee Afflerbach. Afflerbach is a radio frequency engineer with 40 years of experience in designing, evaluating, and testing various radio communication systems, including cellular networks, for public sector entities. For example, Afflerbach has served as a consultant on wireless facilities applications and has reviewed or supervised the evaluation of hundreds of applications for cell towers for clients in the Washington, D.C. and Baltimore metropolitan areas. He is designing a communications network for the Delaware Department of Transportation, has performed and managed communication design studies for the FBI, DEA, New York state police, and Georgia state police, and has taught courses on communication designs, applications, and operations. Afflerbach has not worked with any private wireless providers, however.

Afflerbach concluded that T-Mobile failed to establish a significant gap in service necessitating the new wireless facility. Afflerbach also provided alternatives he concluded were less intrusive than a facility on the roof of the senior center.

Fed. R. Evid. 702 requires a court to:

> (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's

> testimony is "sufficiently tied to the facts of the case," so that it "fits" the dispute and will assist the trier of fact.

UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 825, 832 (3d Cir. 2020) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993)).

Based on his experience, the Court disagrees with T-Mobile that Afflerbach is not qualified to present expert testimony on the remaining issues in this case. That he has not worked in the private sector, worked with data in a specific format, or worked with a specific city's code goes not to the admissibility of his opinion but to the weight to be afforded to it. The Court rejects T-Mobile's argument that Afflerbach did not base his opinion on industry standards or methodologies. Afflerbach's opinions appear to be based on T-Mobile's professed standards. And because Afflerbach's opinions are based on his experience with various communication systems, including cellular networks, his testimony is not speculative and will aid the Court.

In sum, the Court concludes that Afflerbach's experience renders him qualified as an expert and his testimony is adequately specialized and reliable that it will assist the Court in reaching its determination.

### C. The Motion for Additional Discovery

Defendant's motion for additional discovery is only relevant if the Court retroactively applied the new standard for "effective prohibition" found in the FCC's declaratory ruling. Since the Court has concluded that the FCC's standard does not have retroactive effect in this case and, instead, will apply the Third Circuit's standard, the motion for additional discovery is moot.

## VI. CONCLUSION

For the reasons set forth, the Court will grant Defendants' motion for summary judgment in part and deny it in part. Specifically, the Court concludes that the Board's decision was supported by substantial evidence and, thus, grants Defendants' summary judgment on that issue only. The Court denies Defendants' motion on the issue of whether the Board's decision effectively prohibits T-Mobile from providing wireless service. For the same reasons, the Court will deny T-Mobile's motion for summary judgment. The Court will also deny T-Mobile's motion to exclude expert Afflerbach and Defendants' motion for discovery.

An appropriate order follows.